**VOGUE LINGERIE, INC., Petitioner**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 13065.

United States Court of Appeals Third Circuit.

Argued March 22, 1960.

Decided July 5, 1960.

Gerard D. Reilly, Washington, D. C. (Lawrence T. Zimmerman, Washington, D. C., Reilly & Wells, Washington, D. C., McNerney, Page & Vanderlin, Williamsport, Pa., on the brief), for petitioner.

Melvin Welles, Washington, D. C. (Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Marion L. Griffin, Attorney, National Labor Relations Board, Washington, D. C., on the brief), for respondent.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The issues presented in this petition of Vogue Lingerie, Inc., a manufacturer of ladies' wear, for review and modification of an order of the National Labor Relations Board, and a cross-petition of the Board for enforcement of that order, are largely factual. Contention centers around alleged discharges of certain Vogue employees.

█ One substantial controversy concerns the Board's finding that petitioner discharged employee Sylvia Robison on August 21st in such circumstances as to make that action a violation of Section 8(a)(1) of the National Labor Relations Act, as amended. 29 U.S.C.A. § 158(a)(1). Petitioner begins his argument on this point with a procedural contention. It is urged that this finding cannot stand because the complaint did not inform the petitioner how or why the discharge constituted a Section 8(a)(1) violation. The complaint did allege that Sylvia Robison was discharged on August 21st and that this discharge constituted a violation of Section 8(a)(1). It did not state what attendant circumstances made the discharge thus wrongful. But petitioner made no point of this omission at the time or when the matter came on for hearing. Rather, it stated in its answer that the discharge was for just cause, as it would prove at the hearing. Moreover, at the hearing the employer was not surprised or disadvantaged on this issue because the circumstances of the discharge and the reason for it were developed in large measure through testimony of petitioner's own plant manager who had ordered the termination of this employee's services. In the circumstances the argument of inadequate notice of the alleged unfair labor practice fails.

█ On the merits of this claim of unfair dismissal the Board found, and it

is not now disputed, that on August 7th petitioner discharged Sylvia Robison from a supervisory position in its plant. The evidence as to subsequent events was conflicting. However, the Board's finding that Miss Robison was subsequently reemployed by the petitioner on August 20th in a nonsupervisory position as a sewer, only to be discharged from that job on the following day, August 21st, was a permissible conclusion on all of the evidence. There was substantial indication that both a desire to avoid labor controversy and recognition of this employee's competency to perform routine production work without supervisory duties were causes of this rehiring.

It is the next step of the Board's factual analysis with which the petitioner takes most serious issue. The Board found that Sylvia Robison was discharged on August 21st, the day after her rehiring, because the petitioner had learned in the interim that an unfair labor practice charge had been filed against it in connection with the earlier August 7th discharge of this employee. The petitioner insists that the record does not support this finding against it. However, the employer's own plant manager, who ordered the discharge, testified before the trial examiner that the basic reason for his action was the receipt of a registered letter with the charge in it. We have considered the employer's argument that other explanatory testimony indicates that the manager did not mean what his answer standing alone says. We have read all of the testimony in this connection and think the Board was justified in treating this admission as sufficient evidence that the discharge was the employer's reaction to the filing of an unfair labor practice charge in the interest of this employee. Of course a discharge for such a reason may tend, as the Board found it did in this case, to restrain employees from using the legal procedures of the Act to vindicate their rights and thus constitute a violation of the general prohibition in Section 8(a) (1) against coercion of "employees in the exercise of the rights guaranteed in sec-

tion 7". Cf. N.L.R.B. v. Newark Morning Ledger Co., 3 Cir., 1941, 120 F.2d 262, 137 A.L.R. 849; N.L.R.B. v. Better Monkey Grip Co., 5 Cir., 1957, 243 F.2d 836. So much of the Board's order as is predicated on the Robison matter will be enforced.

A second principal point of contention is the Board's finding that five employees were wrongfully discharged for engaging in an economic strike. The petitioner employed some two hundred persons in its plant and thirty of them struck on September 10th. On September 18th each of the strikers was notified in writing that "you are no longer an employee of the Vogue Lingerie Company since you have been replaced by another employee". We agree with the Board that this notice of replacement was in substance a dismissal. But the termination of employment status of economic strikers was permissible if, as the employer asserted, the striking employees had been replaced. N.L.R.B. v. Mackay Radio & Tel. Co., 1938, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381. The issue here is whether the employees had in fact been replaced.

The record is clear that thirty employees went on strike and that thereafter thirty new or former employees were hired before the employer notified the strikers that they had been replaced and were accordingly dismissed. In these circumstances the trial examiner ruled "that the original 30 strikers named in Appendix A of the complaint, excepting Galena Shemory, were effectively replaced in Respondent's plant by newly hired or recalled employees prior to notice of replacement sent them by registered mail on September 18, 1957. Thereby, these 30 strikers lost any right of reinstatement to which they might have been entitled had they notified their employer that they were unconditionally ready and willing to return to work". But the Board rejected this finding and found instead that 24 of the strikers were sewers and only 19 sewers were included among the 30 newly employed persons. On this basis the Board con-

cluded that five strikers' positions remained vacant at the time of the discharge.

We think the Board's reversal of the trial examiner's finding was based on speculation and unjustified inference. First, the conclusion that 24 of the discharged persons were sewers at the time of the strike was based entirely upon a document which stated the capacities in which employees were originally hired. Yet, the record is clear that transfers from one employment classification to another within this plant were normal and very frequent. There was simply no inquiry at the hearing and there is no evidence in the record of the job classifications of the several strikers at the time they stopped working. A second consideration militates even more strongly against the Board's findings. The Board reasoned that the replacement of sewers was achieved solely by bringing in new sewers from the outside. However, some 180 employees remained on duty while 30 went out on strike. There was undisputed testimony of a supervisor that an unspecified number of striking girls from her section were replaced by intra-plant transfers. Other evidence showed additional transfers from one job classification to another within the plant. It seems clear that replacement of the 30 strikers in this case involved both direct hiring of persons in the same job classification as strikers and hiring in other classifications to fill vacancies caused by intra-plant transfers to strikers' jobs. In these circumstances we think there was no justification for the Board's finding, contrary to the finding of the trial examiner, that the strikers were not replaced, merely because the job classifications of the new employees did not exactly match the presumed job classifications of the strikers.

Finally, the Board reasoned that additional support was afforded its conclusion concerning replacements by the fact that shortly after September 18th the employer hired even more sewers. But the evidence is clear that the employer continued to hire new workers, expanding its operation, throughout the fall season. This enlargement of the work force beyond its early September level has no tendency to prove that the strikers were not replaced by September 18th. The continuing employment of new workers might have been relevant if the strikers had sought reinstatement during the expansion period, but it is clear that they did not do so. It was for them a matter of no significance that after they had been replaced the employer continued to hire new workers.

The order of the Board will be modified to eliminate all provisions which concern or depend upon the discharge of sewers on September 18th. As thus modified the order will be enforced.